UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

MICHAEL ANTHONY GREEN,

                              Petitioner,

          v.                                            9:22-CV-1307
                                                        (BKS)
D. CHRISTENSEN, Warden,

                              Respondent.

_____

APPEARANCES:                                      OF COUNSEL:

MICHAEL ANTHONY GREEN
Petitioner pro se
47108-039
Ray Brook Federal Correctional Institution
P.O. Box 900
Ray Brook, NY 12977

HON. CARLA B. FREEDMAN                    RANSOM REYNOLDS, III, ESQ.
United States Attorney for the             Ass't United States Attorney
Northern District of New York
100 South Clinton Street
P.O. Box 7198
Syracuse, New York 13261

BRENDA K. SANNES
Chief United States District Judge

## DECISION and ORDER

## I.   INTRODUCTION

        Petitioner Michael Green seeks federal habeas corpus relief pursuant to 28 U.S.C. §

2241.  Dkt. No. 1, Petition ("Pet."); Dkt. No. 1-1, Memorandum of Law in Support of the

Petition.  Respondent opposed the petition and filed relevant records in support thereof.  Dkt.

No. 12, Memorandum of Law in Opposition ("Resp. Memo."); Dkt. No. 12-1, Declaration of

John McEvoy ("McEvoy Decl.");  Dkt. No. 12-2–12-12, Exhibits.  Petitioner then filed a reply.

Dkt. No. 16, Traverse.  For the reasons outlined below, the petition should be denied and dismissed.

## II.    RELEVANT BACKGROUND[1]

### A.    State Criminal Conviction and Sentence

In 2011, petitioner was convicted, pursuant to a guilty plea, of one count of armed robbery, and sentenced by the Third Judicial Circuit, in Wayne County, Michigan, to an 8- to 20-year term of imprisonment.  McEvoy Decl. ¶¶ 5-6; Dkt. No. 12-3 at 2 (Judgment of Sentence and Commitment to Michigan Department of Corrections ("DOCS") form).

On May 8, 2019, petitioner was paroled from the State of Michigan DOCS custody to the exclusive custody of the federal government via the United States ("US") Marshals. McEvoy ¶ 11; Dkt. No. 12-8 at 2 (Michigan Parole Board Order).

### B.    Federal Criminal Conviction and Sentence

On April 4, 2012, while serving his state sentence in the Michigan DOCS, petitioner was charged with two counts of Robbery Affecting Interstate Commerce, in violation of 18 U.S.C. § 1951, and two counts of Using or Carrying a Firearm During a Federal Crime, in violation of 18 U.S.C. § 924(c).  *United States v. Green et al.*, No. 2:12-CR-20218 (E.D. Mi.) ("*Green I*"), Dkt. No. 1, Indictment; *accord* Dkt. No. 12-2 at 5 (indicating the federal charges which petitioner was charged with violating).  On April 25, 2012, petitioner was released to the US Marshals, on a writ of habeas corpus ad prosequendum, for an appearance in the United States District Court for the Eastern District of Michigan.  McEvoy Decl. ¶ 7; Dkt. No. 12-2 at 5 ("On April 12, 2012, a writ . . . was issued."); *Green I*, Dkt. No. 2, Order with

---

[1] Citations to the filings in this case refer to the pagination generated by CM/ECF, the Court's electronic filing system.

Petition.  This was the first of five such writs, whereupon petitioner was placed in custody of the US Marshals, for appearances in federal court related to the criminal charges in *Green I*, and then returned to Michigan State DOCS custody.  McEvoy Decl. ¶ 7; Dkt. No. 12-2 at 3, 5 (identifying that petitioner was "[o]n a writ . . . from April 25, 2012, to June 1, 2012, and from July 23, 2012, to July 24, 2012," for two appearances before the magistrate judge and one before the district judge); *accord Green I*, Dkt. Nos. 28, 30, 34 & 79, Orders with Petition (dated June 21, 2012; July 12, 2012; July 24, 2012; and April 11, 2013, respectively).

On April 11, 2013, petitioner was sentenced by the United States District Court for the Eastern District of Michigan to a total term of 471 months' incarceration.  McEvoy ¶ 8; Dkt. No. 12-5 at 4.  Specifically, petitioner received an 87-month term of imprisonment for two counts of Robbery Affecting Interstate Commerce, to be served concurrent with each other and the state conviction/charges but consecutive to the other two counts; 84 months for the first count of Using or Carrying a Firearm During a Federal Crime of Violence which was to run consecutive to all other counts and the state charges/convictions; and 300 months for the second count of Using or Carrying a Firearm During a Federal Crime of Violence to run consecutive to all other counts and state charges/convictions.  McEvoy ¶ 8; Dkt. No. 12-5 at 2-4 (Judgment in a  Criminal Case from the Eastern District of Michigan).[2]

On October 3, 2014, petitioner received an amended judgment.  McEvoy ¶ 9; Dkt. No. 12-6.[3]  The judgment, citing Federal Rule of Criminal Procedure 35(b), was amended to accommodate a "Reduction of Sentence for Changed Circumstances[.]"  McEvoy ¶ 9; Dkt.

---

[2] *See Green I*, Dkt. No. 92, Judgment.

[3] The Criminal Docket Sheet in *Green I* does not have an entry for the Amended Judgment.

3

No. 12-6 at 2.  Accordingly, petitioner's imprisonment now totaled "120 months to run consecutive to his undischarged term of imprisonment in [the] State of Michigan case[.]" McEvoy ¶ 9; Dkt. No. 12-6 at 4.

On October 15, 2013, petitioner received a second amended judgment.  McEvoy ¶ 10; Dkt. No. 12-7.[4]  The sentence was amended to "[c]orrect[] . . . [a c]lerical [m]istake . . . [and] reflect the correct term of incarceration."  Dkt. No. 12-7 at 2.  The total term of imprisonment was now "180 months to run consecutive to [petitioner's] undischarged term of imprisonment in [the] State of Michigan case[.]"  McEvoy ¶ 10; Dkt. No. 12-7 at 4.

As previously stated, on May 8, 2019, petitioner was paroled from state custody and received into federal custody.  McEvoy ¶ 11; Dkt. No. 12-8 at 2 (Michigan Parole Board Order).  Accordingly,  "[p]etitioner's 180-month sentence [was] . . .  calculated to begin on May 8, 2019, the date he was paroled from his State Sentence, and will conclude on March 15, 2032, upon reaching his BOP Good Conduct Time Release Date."  McEvoy ¶ 15; *see also* Dkt. No. 12-11 at 2-3 (noting projected release date).

## III.    THE PETITION

Petitioner challenges the Bureau of Prison's ("BOP") decision to deny him 2,228 days of credit toward his federal sentence computation for his custody in the Michigan DOCS. Pet. at 2, 5-6; Dkt. No. 1-1 at 1.  Petitioner argues that he is entitled to federal habeas relief because his Due Process rights were violated.  Dkt. No. 1-1 at 2.  Liberally construing the Petition and Traverse, it appears that petitioner generally argues that the BOP erred in failing to credit petitioner's federal sentence with the time he spent in state custody.  *Id.* at 8-9.

---

[4]  The Criminal Docket Sheet in *Green I* does not have an entry for the Second Amended Judgment.

Further, petitioner specifically contends that the BOP erred by failing to grant petitioner's motion for a *nunc pro tunc* designation. *Id.* at 3-10. Petitioner seeks recalculation of his jail time, specifically requesting the inclusion and application of 2,228 days credit from his detention in the Michigan DOCS. Pet. at 7.

**IV.   DISCUSSION**

Habeas corpus relief is available if a prisoner is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). A petition is properly brought pursuant to 28 U.S.C. § 2241 where a federal prisoner challenges the execution of his or her sentence, rather than its imposition. *See Adams v. United States*, 372 F.3d 132, 134-35 (2d Cir. 2004); *Jiminian v. Nash*, 245 F.3d 144, 146-47 (2d Cir. 2001). Execution of a sentence includes, among other things, the computation of the sentence; thus, a § 2241 petition is the proper means to challenge said computation. *Adams*, 372 F.3d at 135 (citing *Nash*, 245 F.3d at 146); *see also Cook v. N.Y.S. Div. of Parole*, 321 F.3d 274, 278 (2d Cir. 2003) (explaining that a petitioner can use 2241 to challenge a federal official's computation of a sentence, parole decisions, or prison disciplinary actions). Petitions filed under section 2241 must name the petitioner's warden as respondent and be filed in the district of the petitioner's confinement. 28 U.S.C. § 2241(a); *Rumsfeld v. Padilla*, 542 U.S. 426, 435, 447 (2004).

Here, petitioner is incarcerated at Ray Book, in the Northern District of New York, and challenges the amount of detention credit the BOP awarded him. Accordingly, the § 2241 petition is the appropriate procedural vehicle to address petitioner's challenge to the execution of his sentence. *Adams*, 372 F.3d at 135. Further, petitioner is correctly making

this challenge within the district in which he is confined.  28 U.S.C. § 2241(a).

### 1.    Exhaustion

A petitioner seeking relief pursuant to § 2241 must exhaust his or her administrative remedies.  *Carmona v. United States Bureau of Prisons,* 243 F.3d 629, 634 (2d Cir. 2001); *accord Lallave v. Martinez*, 609 F. Supp. 3d 164, 179 (E.D.N.Y. 2022).  "This requires compliance with the BOP's four-step Administrative Remedy Program."  *Lallave*, 609 F. Supp. 3d at 179 (citing 28 C.F.R. § 542.10(a)).

This Court has previously outlined how exhaustion must occur:

> Available to all federal prison inmates is an internal, four-step administrative grievance procedure adopted by the BOP for the stated purpose of "allow[ing] an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." . . . The first step of the prescribed process entails making an effort to obtain an early resolution of the matter by raising the issue informally to staff. . . . In the event this avenue does not lead to a successful resolution, the inmate next may submit a formal written [Administrative Remedy ("AR")] to the warden of the particular facility involved, utilizing a designated BP–9 form, within twenty days of the relevant event. . . . If the AR is denied, an appeal may be taken to the appropriate BOP Regional Director within twenty calendar days of the date of denial. . . . As a fourth and final step, an unfavorable decision from the Regional Director may be appealed to the General Counsel's office (also referred to as the "Central Office" [or "CORC"]) within thirty days of the date on which the Regional Director rejects the inmate's appeal.

*Barber v. Perdue*, No. 9:11-CV-0127 (NAM/DEP), 2012 WL 5996342, at *4 (N.D.N.Y. Nov. 9, 2012) (citing cases and 28 C.F.R. §§ 542.10(a), 542.13(a), 542.14(a), & 542.15(a)) (internal citations omitted)).[5]  In sum, "[u]ntil the BOP's Central Office considers the appeal, no

---

[5] The exhaustion provisions imposed by the Prisoner Litigation Reform Act ("PLRA") do not apply to habeas corpus petitions.  *Carmona*, 243 F.3d at 634 ("[W]e note that although . . . the P[LRA] . . . contains a statutory administrative exhaustion requirement . . . the requirements of the Act do not apply to habeas proceedings[,]" regardless of whether the petition is brought pursuant to § 2254 or § 2241).

administrative remedy is considered to be fully exhausted." *Strong v. Lappin*, No. 1:09-CV-3522, 2010 WL 276206, at *4 (E.D.N.Y. Jan. 15, 2010); *accord, Barber*, 2012 WL 5996342, at *4.

"A prisoner who seeks review of the Bureau of Prisons' denial of his nunc pro tunc designation request must first . . . exhaust his administrative remedies." *Henriquez v. United States*, No. 1:12-CV-5590, 2012 WL 6739422, at *3 (S.D.N.Y. July 16, 2012) (citing *inter alia Setser v. United States*, 566 U.S. 231, 244 (2012) (stating that petitioner is free to challenge BOP's time credit determination first "through the Bureau's Administrative Remedy Program . . . [a]nd if that does not work, [through] . . . a writ of habeas corpus.")).

Here, petitioner represents that he properly exhausted his administrative remedies. Dkt. No. 1-1 at 2.  Specifically, "[p]etitioner asserts, that he has filed BP 8, BP 9, BP 10, as well as BP 11 [forms; h]owever, because he has transferred several different times, his property has inadvertently been lost and/or misplaced[.]" *Id.*  Accordingly, petitioner could not include documentary proof of the exhaustion of his administrative remedies with the instant pleading. *Id.*

Respondent states that "[w]hile [p]etitioner has utilized the BOP's Administrative Remedy Program, to include filing multiple remedy submissions at all three levels and [an] attempt to raise the issue of his sentence calculation at the Institutional level, he has failed to properly raise this issue at any level and thus failed to fully exhaust this issue with the BOP's Central Office."  McEvoy ¶ 18.[6]  Specifically, petitioner attempted to file two administrative

---

[6] "The BOP maintains a database known as the SENTRY Inmate Management System ("SENTRY").  In the ordinary course of business, computerized indexes of all formal administrative remedies filed by inmates are maintained by the Institution, Regional, and Central Offices." *Navarro v. Barraza*, No. 3:23-CV-0514, 2023 WL 3483235, at *2 (M.D. Pa. May 16, 2023).  Management Analysts, like John McEvoy, have access to SENTRY and can review the database to determine compliance with the Administrative Remedy Program. McEvoy ¶ 17.

remedy submissions about his sentence computation at the institutional level in 2020; however, both were rejected for being incomplete and neither was re-filed.  McEvoy ¶¶ 19-20; Dkt. No. 12-12 at 3 (showing two entries, with different remedy request numbers and alphabetic designations of "F" for submission to the local facility, indicating that the first administrative remedy submission, filed on December 14, 2020, was rejected for being incomplete because it failed to include the required Response and the second, filed on December 17, 2020, was not properly dated).

Further, petitioner filed four additional administrative remedy submissions, all sharing the same identification number and related to his "DHO Appeal," while incarcerated at Ray Brook on October 28, 2021 (to the Regional Office); November 17, 2021 (to the Regional Office); February 9, 2022 (to the Office of General Counsel); and July 1, 2022 (to the Office of General Counsel), respectively.  McEvoy ¶ 21; Dkt. No. 12-12 at 4-5.  None of these attempts at the administrative remedy system "included an attempt to re-file on [petitioner's] sentence calculation [claim]."  McEvoy ¶ 21.

Petitioner's first challenge to his "DHO Appeal," sent to the Regional Office, was rejected the same day because petitioner failed to "file in the region [in which he was] housed."  Dkt. No. 12-12 at 4.  Petitioner's resubmission to the Regional level was denied on December 15, 2021.  *Id.*  Petitioner's then filed an appeal with CORC, which was rejected on

---

"Administrative remedy submissions in SENTRY are identified first by a remedy request number that is followed by an alphabetic designation showing whether the remedy was received by the local correctional facility (denoted by a letter "F"), Regional Office (denoted by a letter "R"), or Office of General Counsel (denoted by the letter "A"); and then a number showing how many times a particular request had been received at that level."  *McDonald v. Sage*, No. 3:20-CV-1737, 2022 WL 503925, at *3 n.4 (D. Conn. Feb. 18, 2022).

"SENTRY generates a report titled 'Administrative Remedy Generalized Retrieval' which allows codes to be entered to identify the reason or reasons for rejecting a request for administrative relief."  *Navarro*, No. 3:23-CV-0514, 2023 WL 3483235, at *2.  The retrieval report was the attachment McEvoy relied upon while discussing the information in this section.  McEvoy ¶ 18; Dkt. No. 12-12.

December 15, 2021.  *Id.* at 5.  However, petitioner was given the opportunity to resubmit the

appeal if it was modified "to include no more than one continuous page (Rejection Status

Reason "CPG")," *James v. Rios*, No. 1:12-CV-0008, 2012 WL 2912249, at *2 (E.D. Cal. July

16, 2012), and "in proper form [sent] within 15 days of the date of the rejection notice

[(Rejection Status Reason "RSA")]," *Williams v. Wilcox*, No. 1:13-CV-3249, 2014 WL

12825230, at *3 (D. Colo. Oct. 28, 2014).  Dkt. No. 12-12 at 5 (indicating the rejection status

reasons were "CPG" and "RSA").  Petitioner's fourth challenge regarding his "DHO Appeal"

was denied by CORC on September 12, 2022.  *Id.*[7]

Despite petitioner's assertions, he has not properly exhausted his administrative

remedies because he has not utilized all four steps of the Administrative Review Process for

his sentence computation/time credit claim.  McEvoy ¶¶ 18-21.  The Administrative Remedy

Generalized Retrieval report partially supports petitioner's representations that he engaged in

the Administrative Remedy program because it corroborates that he filed six different

Administrative Review submissions during the eighteen-month period from December of

2020 through May of 2022, two of which challenged petitioner's sentence computation/time

credit.  Further, the Administrative Generalized Retrieval Report demonstrated that petitioner

filed forms seeking relief at each level of the Administrate Remedy process.  *See* Dkt. No.

12-12 at 3-5 (indicating that the challenges to the "Time-Sentence Calculation"/"Jail Credit"

were filed at the local institutional level whereas the challenges to the "DHO Appeal" were

filed at the Regional and General Counsel level).  Therefore, petitioner was aware of all of

---

[7]  The Administrative Remedy Generalized Retrieval report indicated that two of petitioner's attempts were "DNY".  Dkt. No. 12-12 at 4 & 5.  The status code DNY means that the remedy requested was "substantially denied in full."  *Cooley v. True*, No. 1:14-CV-3119, 2015 WL 393864, at *2 (D. Colo. Jan. 29, 2015).

the different tiers which existed to provide him with administrative relief.

However, the report does not support petitioner's conclusions that he filed all of the necessary paperwork to appeal his complaint about his time computation/jail credit from the local facility level to the BOP's Office of General Counsel.  In fact, the report shows that petitioner's sentence calculation/time credit claim never advanced through, let alone past, the first level of local facility administrative review.  Therefore, the BOP's official record refutes petitioner's conclusory contentions that he properly filed everything he needed to exhaust his time computation claim.  Thus, the claim is unexhausted.  *Strong*, 2010 WL 275206, at *4.

Petitioner replied that he "made multiple attempts to resolve this matter," by conferring with various Ray Brook employees including, but not limited to, someone in the records department, his Unit Team, the Case Manager Coordinator, the Associate Warden, and the Warden.  Dkt. No. 16 at 2.  Further petitioner contends that both he and his family unsuccessfully attempted to acquire administrative remedy forms (i.e. BP-9s, -10s and -11s), as well as writing unanswered letters to the Sentence Computation Center, the Northeast Regional Offices, and the Office of General Counsel.  *Id.*  Liberally construing petitioner's Traverse, he seems to argue that the exhaustion requirement should be waived given his aforementioned efforts.

"The Second Circuit has held that a petitioner may pursue a request for habeas corpus relief, including pursuant to 28 U.S.C. § 2241, even where he has failed to exhaust administrative remedies prior to filing the action in district court, only upon a showing of cause and prejudice."  *Barber*, 2012 WL 5996342, at *5 (citing *Carmona*, 243 F.3d at 634 ("[T]he interests of judicial economy and accuracy are served by requiring that, absent a showing of cause and prejudice, appeals proceed in the first instance through the agency

10

review process.").  When "legitimate circumstances beyond the prisoner's control preclude him from fully pursuing his administrative remedies, the [cause and prejudice] standard . . . [provides for an accepted and well-recognized] excuse[ for] th[e] failure to exhaust." *Carmona*, 243 F.3d at 634.

Here, petitioner has failed to present circumstances supporting waiver.  First, petitioner's unwavering conclusion that exhaustion was impossible because of his inability to procure the BOP forms, either himself or via his family, is unpersuasive.  In his pleading, petitioner indicates that he has successfully filed all of the BOP forms required to exhaust his remedies, which is inconsistent with, and contrary to, the argument advanced in his Traverse. Further, petitioner fails to provide any type of evidence regarding the unsuccessful attempts he and his family made to procure said forms.  *See Zenquis v. Pullen*, No. 3:22-CV-1151, 2023 WL 2931585, at *4-*5 (D. Conn. Apr. 13, 2023) (emphasizing that "denial of grievance forms does not, in itself, make administrative remedies unavailable," yet finding petitioner sufficiently demonstrated, via documentation memorializing repeated requests to staff, that their actions delaying the provision of administrative grievance forms was sufficient to establish cause and prejudice to waive exhaustion).  Moreover, even if petitioner did not properly initiate the appeal process, he did successfully engage with the administrative review program multiple times as evidenced by the Administrative Remedy Generalized Retrieval report.  Consequently, petitioner either lied and was previously able to receive BOP forms or proper BOP forms were not a prerequisite for having his claims pass through the administrative review process.

Second, petitioner cannot claim that he was ignored or unaware of how the grievance process worked.  This is illustrated by the two Regional challenges petitioner filed regarding

11

his "DHO Appeal."  Dkt. No. 12-12 at 4.  Petitioner was informed that his first submission was rejected on a procedural ground; however, he timely remedied the deficiency, as evidenced by the resubmission to the Regional office, which was "substantially denied in full", presumably on the merits.  Dkt. No. 12-12 at 4; *see also Cooley,* No. 1:14-CV-3119, 2015 WL 393864, at *2 (defining the rejection reason code "DNY").  Even though petitioner was not successful, he was able to properly file and have his challenge evaluated through part of the administrative process.  Therefore, this demonstrates that petitioner was able to engage in the Administrative Remedy Program; he just appears to have chosen to do so in a manner that did not comply with the BOP's established procedure.

Finally, to the extent petitioner felt that his history of rejections or denials would inevitably lead to an unfavorable decision with respect to his time credit claim, such assertions are insufficient to waive the exhaustion requirement.  *See Rosenthal v. Killian*, 667 F. Supp. 2d 364, 367 (S.D.N.Y. 2009) ("[E]ven if it is likely that [petitioner's] administrative appeals would have been denied, such a showing would not prove futility."); *accord Atkinson v. Linaweaver*, No. 1:13-CV-2790, 2013 WL 5477576, at *2 (S.D.N.Y. Oct. 2, 2013) (holding that where "[p]etitioner provides no basis for his futility argument beyond the fact that his prior administrative requests were denied," such arguments are "insufficient as a matter of law to establish futility.") (citing cases).

Therefore, petitioner has failed to establish cause to excuse his failure to exhaust his administrative remedies.  Accordingly, the Court need not decide whether he suffered prejudice.  *See Stepney v. Lopez*, 760 F.2d 40, 45 (2d Cir. 1985).

### 2.    Providing Nunc Pro Tunc Designation

Even assuming petitioner's claims are not unexhausted, they would still be denied as meritless.  Petitioner contends that the BOP erred when it denied his motion for *nunc pro tunc* designation and refused to apply an additional 2,228 days of credit, from his incarceration at the Michigan DOCS facility, to his active federal criminal sentence.  Pet. at 5-6; Dkt. No. 1-1 at 1, 4, 6-7.  Further, in petitioner's reply, he argues that the BOP's decision denying his motion was without the proper consideration and, as a result, treated him unfairly.  Dkt. No. 16 at 5-6.

"*Nunc pro tunc* designation is a retroactive designation that the BOP may grant in accordance with the discretion it is given under 18 U.S.C. § 3621(b) to designate the place of a federal prisoner's confinement."  *Wright v. Hudson*, No. 9:12-CV-1638 (JKS), 2015 WL 5971055, at *3 (N.D.N.Y. Oct. 14, 2015); *see also Abdul-Malik v. Hawk Sawyer*, 403 F.3d 72, 75 (2d Cir. 2005) (explaining that "when [a] federal [criminal] sentence is imposed before imposition of [a] state sentence," the BOP has authority under 18 U.S.C.§ 3621(b) "to designate the place of the prisoner's imprisonment," whether that be a state or federal correctional facility or institution, "as the place of federal confinement [so that] . . . the prisoner's sentences would effectively run concurrently.") (citing *inter alia McCarthy v. Doe*, 146 F.3d 118, 120, 123 (2d Cir. 1998); *Barden v. Keohane*, 921 F.2d 476, 481, 483 (3ʳᵈ Cir. 1990) (internal quotation marks omitted).[8]

---

[8] In deciding any *nunc pro tunc* motions, the BOP must evaluate:
    (1) the resources of the facility contemplated;
    (2) the nature and circumstances of the offense;
    (3) the history and characteristics of the prisoner;
    (4) any statement by the court that imposed the sentence--
        (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
        (B) recommending a type of penal or correctional facility as appropriate; and
    (5) any pertinent policy statement issued by the Sentencing Commission pursuant

Any such applications must be given "full and fair" consideration by the BOP; however, it is important to remember that "[t]he decision whether to designate a facility as a place of federal detention is plainly and unmistakably within the BOP's discretion and [the federal courts] cannot lightly second guess a deliberate and informed determination by the agency charged with administering federal prison policy." *Abdul-Malik*, 403 F.3d at 76. Accordingly, the BOP's "decision regarding *nunc pro tunc* designation is reviewed for abuse of discretion." *Jennings v. Schult*, 377 Fed. App'x 97, 98 (2d Cir. 2010) (citing *McCarthy*, 146 F.3d at 123 n.4).

Petitioner cites to inapposite cases, from this Circuit, to support his assertion that the BOP erred in denying his *nunc pro tunc* motion. Specifically, the cases analyze situations where a federal criminal sentence was imposed prior to the imposition of a state criminal sentence. *See Abdul-Malik*, 403 F.3d at 74-75 (asking for "congressional consideration of [federal] statutes," to clarify "the questions as to how to treat prisoners sentenced first in federal and then in state court, and the phenomenon . . . that neither the state nor the federal court can run those sentences concurrently[,]" after independently considering how it impacted the disputed *nunc pro tunc* denial); *Wright*, 2015 WL 5971055, at *4-*5 (considering appropriateness of *nunc pro tunc* denial where "the state court sentencing judge indicated that [petitioner's] state imprisonment term should run concurrently with the already-imposed federal term[.]").

It is important to acknowledge that these cases illustrate the proper legal circumstance when the BOP should apply 18 U.S.C. § 3621(b), the provision under which it is authorized to

---

to section 994(a)(2) of title 28.
18 U.S.C.§ 3621(b).

14

evaluate and decide a motion for a *nunc pro tunc* designation.  *See McCarthy*, 146 F.3d at

122 (explaining that a *nunc pro tunc* consideration is appropriate where a petitioner "received

a federal sentence while in state custody awaiting trial on state charges."); *see also*

*Jennings*, 377 Fed. App'x at 98 (concluding that a *nunc pro tunc* designation is appropriate

where "a defendant held in state custody is produced for federal sentencing . . . and

sentenced, and the state court later imposes a sentence").  However, that particular fact

pattern is inapplicable to the instant case.

Here, when the BOP reviewed petitioner's *nunc pro tunc* motion, it concluded that

"[b]ecause [the] original and Amended Judgment and Commitment Order **clearly state**

**[petitioner's] federal sentence is consecutive to the prior State of Michigan sentence**,

the BOP determined that Petitioner is ineligible[.]"  McEvoy ¶ 14 (emphasis added); *see also*

Dkt. No. 12-7 at 4 (sentencing petitioner to a "term of . . . 180 months **to run consecutive to**

**his undischarged term of imprisonment in [the] State of Michigan case**[.]") (emphasis

added).[9,10]  Contrary to petitioner's position, it would be inappropriate for the BOP to interject

itself into this scenario, and rely on 18 U.S.C. § 3621(b), because a different federal statute

controls.

---

[9] Petitioner was first sentenced, on his state criminal conviction, to a minimum of eight years of state court custody.  Dkt. No. 12-3 at 2.  Approximately a year and a half later, while petitioner was serving his state court sentence, he was sentenced on his federal criminal conviction, Dkt. No. 12-5 at 4; however, that initial federal judgment was twice-amended, Dkt. No. 12-6 at 3-4 & Dkt. No. 12-7 at 3-4.

To the extent petitioner's Traverse advances new arguments asserted for the first time in petitioner's reply about the lawfulness of the resentencing procedures and the amended judgments, Dkt. No. 16 at 9, such arguments will not be considered because these challenges to the imposition of petitioner's sentence appear to best be presented in a habeas petition brought pursuant to Section 2255.  *See Johnson v. United States*, 623 F.3d 41, 45-46 (2d Cir. 2010) (considering whether a habeas petition filed after an amended judgment is successive and concluding that it is not "regardless of whether it challenges the conviction, the sentence, or both.") (citing *Magwood v. Patterson*, 561 U.S. 320, 330-342 (2010)).

[10] The resentencing was prior to petitioner's parole from his state court sentence, which occurred on May 8, 2019.  Dkt. No. 12-8 at 2.

18 U.S.C. § 3584(a) applies to an individual with multiple sentences of imprisonment and provides that when a federal criminal "term of imprisonment is imposed on a[n individual] who [wa]s already subject to an undischarged [state criminal] term of imprisonment, the terms may run concurrently or consecutively." *Id.* In fact, said terms must "run consecutively unless the court orders that the terms are to run concurrently." *Id.* Here, the district court intentionally and unambiguously indicated that the federal term of imprisonment was to run consecutively to the state sentence, an option consistent with the aforementioned federal statute. As the Supreme Court has stated, "[w]hen § 3584(a) specifically addresses decisions about . . . consecutive sentences, and makes no mention of the Bureau's role in the process, the implication is that no such role exists." *Setser v. United States*, 566 U.S. 231, 239 (2012). Therefore, the sentencing judge properly exercised his authority directing how the state and federal sentences would run, and that direction did not lead to a circumstance where a *nunc pro tunc* designation was warranted.[11]

Accordingly, the BOP properly provided petitioner with full and fair consideration and did not abuse its discretion in denying petitioner's request for *nunc pro tunc* designation.

---

[11]   18 U.S.C. § 3584(a) is also used when an individual "was in primary state custody at the time his . . . federal sentence was imposed . . . [but] the district court's judgment [wa]s silent on [how the federal sentence should run,]" because the statute directs that "the court's silence [be] construed as an intent to impose a consecutive sentence, and the federal sentence commences only when primary state custody . . . is relinquished." *Clapper v. Langford*, 186 F. Supp. 3d 235, 238 (N.D.N.Y. 2016). In those circumstances, courts within this Circuit have held that the BOP lacks authority to issue a *nunc pro tunc* designation. *See Jennings v. Schult*, 377 Fed. App'x 97, 98 (2d Cir. 2010) ("because [petitioner] was subject to an undischarged state term of imprisonment at the time the federal court resentenced him, and because the federal court [was silent and] did not direct that its sentence should run concurrently, the statute required that the federal sentence run consecutively, and the B[OP] was without authority to direct otherwise."); *Ortiz v. Breckon*, No. 9:17-CV-0559 (LEK), 2018 WL 557879, at *3 (N.D.N.Y. Jan. 22, 2018) ("[T]he BOP lacks ... authority [to designate, nunc pro tunc, the state facility as a federal prison] when the federal sentencing court imposes sentence after the state and fails to note whether a sentence should be consecutive or concurrent.").

Accordingly, here, where the federal sentencing court was more explicit using 18 U.S.C. § 3584(a) – directing the later-imposed federal sentence run consecutively to the undischarged state sentence – than the courts in *Jennings, Clapper* and *Ortiz*, it stands to reason that the same logic and conclusion applies: the BOP is without authority to grant a *nunc pro tunc* designation.

**3.     Providing Credit for Prior State Service**

Alternatively, petitioner argues that he should receive credit towards his federal sentence for the time he spent in Michigan DOCS custody while he was awaiting his federal criminal trial.  Dkt. No. 1-1 at 6-7, 9.  Again, petitioner relies on several inapposite cases where federal credit was awarded to individuals who were not otherwise under primary state custody.  *See Kayfez v. Gasele*, 993 F.2d 1228, 1290 (7th Cir. 1993) (awarding credit which was formerly applied to petitioner's concurrent state court sentence, which had since been vacated, to petitioner's federal term instead); *McClain v. Bureau of Prisons*, 9 F.3d 503, 505 (6th Cir. 1993) (providing petitioner with credit on his federal sentence for the time he remained in custody, after being awarded state parole, until his federal sentence was issued); *United States v. Harris,* 876 F.2d 1502, 1506-07 (11th Cir. 1989) ("undisputed facts are that the United States agent of the DEA originated the action taken by state and city officers . . . ask[ing] the local officers to seek a warrant from the available state judge," therefore, petitioner was entitled to federal credit for his pretrial detention); *United States v. Eidum*, 474 F.3d 579, 581 (9th Cir. 1973) (clarifying that time credit toward federal custody was only appropriate where some "federal process of any sort had issued against [petitioner, resulting in] . . . his release [being] prevented[.]").

The BOP calculates a term of imprisonment as follows:

> (a) Commencement of sentence.--A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.
>
> (b) Credit for prior custody.--A defendant shall be given credit toward the service of a term of imprisonment for any time he has

17

> spent in official detention prior to the date the sentence commences–
>
> > (1) as a result of the offense for which the sentence was imposed; or
> >
> > (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

18 U.S.C. § 3585.  "The Attorney General, through the BOP, possesses the sole authority to make credit determinations pursuant to 18 U.S.C. § 3585(b)[.]"  *United States v. Whaley*, 148 F.3d 205, 206 (2d Cir. 1998) (citing *United States v. Wilson*, 503 U.S. 329, 333 (1992)) (further citations omitted).

Thus, "[u]nder § 3585(b) . . . the BOP may grant a[n inmate] credit against his federal sentence for time served in custody prior to sentencing in district court so long as that presentence custody has not been credited against another sentence."  *Lopez v. Terrell*, 654 F.3d 176, 178 (2d Cir. 2011) (citing 8 U.S.C. § 3585(b); *United States v. Labeille–Soto*, 163 F.3d 93, 99 (2d Cir.1998) ("[A] defendant has no right to credit on his federal sentence for time that has been credited against his prior state sentence.")) (internal quotation marks omitted).

Here, "[p]etitioner's 180-month sentence has been calculated to begin on May 8, 2019, the date he was paroled from his State Sentence, and will conclude on March 15, 2032, upon reaching his BOP Good Conduct Time Release Date."  McEvoy ¶ 15; Dkt. No. 12-11 at 2-3.[12]  This is consistent with § 3585(b) which indicates that a federal sentence

---

[12]   To the extent petitioner's Traverse puts forth new arguments raised for the first time in his reply about additional Earned Time Credit to which he feels he is entitled as the result of the First Step Act and petitioner's classification as "NOT. . . [a] disqualif[ied] individual[,]" Dkt. No. 16 at 8, such arguments will not be considered at

commences when the petitioner is received into federal custody, which occurred when the US Marshals took petitioner into custody upon his parole from Michigan DOCS. McEvoy ¶ 11.

It is unclear why petitioner feels that he should be entitled to any further time toward his federal sentence. Any argument that "the sentencing court intended that [p]etitioner . . . be credited for his service and pre-trial detention, while housed in the Michigan Department of Corrections," Pet. at 6-7, is irrelevant. "The Bureau of Prisons, and not the courts, determines when a[n individual's] sentence starts and whether th[at individual] should receive credit for any prior time spent in custody." *United States v. Montez-Gaviria*, 163 F.3d 697, 700-01 (2d Cir. 1998) (citing cases). Similarly, petitioner's assertion that his federal sentence commenced immediately upon payment of a special assessment, Pet. at 8, is also inconsistent with the plain meaning of § 3585(b) which conditions commencement of a sentence upon waiting for transport to or arriving at the federal detention facility.

To the extent that petitioner contends that he should receive credit for the time he was participating in his federal criminal prosecution, such claims are meritless. Petitioner's presence in federal court was achieved by a writ ad prosequendum, which may be the federal detainer that petitioner references when he argues he is entitled to credit for his presentence custody. Pet. at 9. However, despite petitioner's assertions, he was not transferred out of state custody and into federal custody when he was released on the writ to appear in federal court for his criminal prosecution. *See Clapper*, 186 F. Supp. 3d at 239

---

this time because the practice is generally inappropriate unless immediate release is at stake, which is not presently the case. *See e.g. Lallave*, 609 F. Supp. 3d at 182 ("[C]ourts typically do not allow new arguments to be made in a reply brief, and this rule applies in the context of habeas petitions," unless the new argument might entitle petitioner to immediate release).

("When a state prisoner is transferred into federal custody pursuant to this writ, the state retains primary custody over [petitioner] . . . because the prisoner is 'on loan' to federal authorities.").  Therefore, "[t]ime in custody pursuant to the writ does not count toward a federal sentence because the time is credited toward the state sentence . . . [and w]hen the federal prosecution is complete, . . . [petitioner is] return[ed] . . . to the primary custodian[, the state.]"  *Id.* at 240 (internal quotation marks and citations omitted).

In sum, the time that petitioner spent in state custody, prior to his parole and transfer into the exclusive custody of the US Marshals, was time he spent serving and receiving credit against his state sentence.  Because § 3585(b) prevents receiving double credit for time spent in custody that has already been applied to another sentence, the BOP correctly applied the federal statute and any request for additional credit for his federal sentence is denied.

## V.   CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the petition, Dkt. No. 1, is **DENIED AND DISMISSED** in its entirety; and it is further

**ORDERED** that because the petition was brought under 28 U.S.C. § 2241, a certificate of appealability is not required for petitioner to appeal the denial of his petition. *See Murphy v. United States*, 199 F.3d 599, 601 n.2 (2d Cir. 1999) (holding that the Antiterrorism and Effective Death Penalty Act's certificate of appealability requirement does not apply to § 2241 petitions).  However, to the extent one is required, the Court recommends that no certificate of appealability be issued because reasonable jurists would not find it debatable that petitioner has failed to demonstrate by a substantial showing that he

was denied a constitutional right.  *See* 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000); and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

Dated: <u>July 5, 2023</u>

Brenda K. Sannes
Chief U.S. District Judge